## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN FORD, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-07-2693 |
| | § | |
| LEHMAN BROTHERS, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND OPINION

Karen Ford sued her former employer, Lehman Brothers, Inc. ("Lehman Brothers"). She alleges that Lehman Brothers discriminated against her on account of a disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* She also asserts causes of action against Lehman Brothers for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, defamation, slander, intentional infliction of emotional distress, and invasion of privacy. In addition, she alleges that Lehman Brothers terminated her employment in retaliation after she asserted rights under the ADA and FMLA.

Lehman Brothers has moved to dismiss or stay this litigation and to compel arbitration. The motion is based on an arbitration provision in an employment application that Ford signed on September 19, 2000 when Lehman Brothers acquired Ford's previous employer, S.G. Cowen Securities Corp. (Docket Entry No. 8).

Ford has responded to the motion to dismiss or stay and to compel arbitration.

(Docket Entry No. 9).  She argues that the arbitration provision is unenforceable on the grounds that the document she signed was not an employment contract, there was no consideration to support the agreement to arbitrate, she had no notice that the arbitration provision would constitute a substantial change in the terms of her employment, and the arbitration provision is unconscionable.  Lehman Brothers has replied, (Docket Entry No. 10), and filed a supplement to its motion to compel arbitration, (Docket Entry No. 14).  In the supplement, Lehman Brothers submitted a copy of the Application for Security Industry Registration or Transfer (Form U-4) that Ford signed on September 26, 2004.  That Form U-4 also contained a broad arbitration provision.  Lehman Brothers has also moved to continue the initial scheduling conference until the motion to compel arbitration and to dismiss or stay are decided.  (Docket Entry No. 11).  Ford has responded.  (Docket Entry No. 13).

Based on the motions, responses, and replies; the parties' submissions; and the applicable law, this court grants Lehman Brothers's motion to dismiss and to compel arbitration.  Lehman Brothers's motion to continue and request to stay are denied as moot. The reasons for this ruling are set out in detail below.

## I.      The Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation
of any contract.

Under the FAA, a court must decide "whether the parties agreed to arbitrate the dispute in question. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). If there is a binding agreement to arbitrate, a court must then decide whether the dispute is within the scope of that agreement. *Id.* at 418. Finally, the court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 418 (citing *Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth*, 473 U.S. 614, 628 (1985)). "The Federal Arbitration Act (FAA) expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).

## II.    Analysis

In her response to Lehman Brother's motion to dismiss and to compel arbitration, Ford argues that the employment application that she signed is not an enforceable employment contract. She relies on language at the bottom of the first page of the application that states, "If employed by Lehman Brothers Inc. or its affiliates, you may be asked to bring three

letters of reference from individuals who can account for previous unemployment and self-employment as indicated above." (Docket Entry No. 8, Ex. A). Ford argues that the conditional language, "[i]f employed by Lehman Brothers," shows that Lehman Brothers "did not believe that the plaintiff was employed with Lehman Brothers inc. at the time she allegedly signed the application." (Docket Entry No. 9 at 2). Ford argues that because she did not sign an employment agreement or sign an arbitration agreement after signing her employment application, Lehman Brothers has failed to show that she signed an arbitration agreement "during her employment" with Lehman Brothers. (*Id.* at 2). Ford also argues that there is no consideration to support an agreement to arbitrate. Citing *In re Halliburton*, 80 S.W.3d 566 (Tex. 2002), Ford further contends that the arbitration agreement is unenforceable because the employment application she signed did not provide notice that the arbitration agreement substantially changed the terms of her employment. Ford asserts that because she "was never notified by anyone of the required arbitration policy" and she "could barely see the writing on the paper," she had no notice of "definite changes to her employment." (Docket Entry No. 9 at 3). In addition, Ford argues that the arbitration agreement is unconscionable because the employment application that she signed did not caution her that it contained an arbitration provision "that would be binding on her should she be employed with the company." (*Id.* at 3). Ford alleges that she was fraudulently induced to sign the arbitration agreement because she believed that signing the application "was just a formality for continued employment." (*Id.* at 4). Ford also contends that the arbitration agreement is unconscionable because it does not provide for a neutral arbitrator

and requires a plaintiff "to pay arbitration fee[s] that are so prohibitive, the party effectively will be denied access to the arbitration forum."  (*Id.* at 4).

Lehman Brothers responds that a separate employment contract is not required for the arbitration agreement to be enforceable.  According to Lehman Brothers, the arbitration agreement is supported by consideration in that Lehman Brothers agreed to continue Ford's employment after acquiring her previous employer.  Lehman Brothers also contends that federal and state law do not require an arbitration agreement to be made more conspicuous, or otherwise provide greater notice, than other contract terms.  Lehman Brothers contends that the terms of the arbitration agreement are clear and that by its language, the agreement provides the necessary notice.  Immediately above the signature line, the arbitration agreement states, "I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment with Lehman Brothers Inc. . . . shall be submitted to arbitration . . . ."  (Docket Entry No. 8, Ex. A).  Lehman Brothers also argues that Ford has failed to establish either procedural unconscionability or substantive unconscionability under Texas contract law.  Relying on *Halliburton*, 80 S.W.3d at 572, and *In re Advance PCS Health L.P.*, 172 S.W.3d 603, 608 (Tex. 2006), Lehman Brothers contends that the arbitration provision is not unconscionable under Texas law simply because the provision was included in an employment application or because agreement was a prerequisite to employment.  Lehman Brothers argues that the arbitration agreement provided sufficient notice and that Ford has failed to show that she was fraudulently induced or coerced into signing the agreement.  In addition, Lehman Brothers argues that Ford is

5

claiming fraudulent inducement to enter the employment contract, not merely the arbitration provision.  Lehman Brothers contends that such fraudulent inducement claims must be submitted to the arbitrator under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967).  Finally, Lehman Brothers argues that Ford has not shown that the arbitration agreement is substantively unconscionable.  Lehman Brothers contends that "[m]ere speculation that a 'risk' exists that a plaintiff will be burdened with prohibitive costs is insufficient" under *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000).  Because Ford has asserted a claim under the ADA, Lehman Brothers asserts that she would pay a filing fee of no more than $200 under Rule 13802 of the NASD Code of Arbitration Procedure for Industry Disputes.  (Docket Entry No. 10, Ex. 1).  Those rules allow the arbitrator to defer all or part of the plaintiff's filing fee based on financial hardship and to require the defendant to pay the remaining fees, which are not subject to allocation in the award.

Lehman Brothers also points that after Ford signed her employment application on September 19, 2000, she also signed an "Application for Security Industry Registration or Transfer," also known as a "Form U-4," on September 26, 2000.  (Docket Entry No. 14 at 1).  The Form U-4 contains an arbitration provision that states:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Item 11 . . . and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Docket Entry No. 14, Ex. A). The "SROs" mentioned in the Form U-4's arbitration provision are Self-Regulatory Organizations, including the NASD, the New York Stock Exchange (NYSE), and the newly created Financial Industry Regulatory Authority ("FINRA"), which consolidates the NASD and the member regulation, enforcement, and arbitration functions of the NYSE. The FINRA rules do not require arbitration of statutory employment claims absent an agreement between the parties. The arbitration agreement in Ford's employment application includes statutory employment claims. Lehman Brothers argues that the arbitration provisions in both the employment application and the Form U-4 gave Ford notice of her agreement to arbitrate.

Arbitration agreements are fundamentally contracts. Courts determine the enforceability of an arbitration agreement according to the applicable state law of contract formation. *See First Options of Chicago*, 514 U.S. at 943–44; *see also Carson v. Higbee Co.*, 149 Fed.Appx. 289, 291 (5th Cir. 2005) ("Where, as here, the issue is whether the parties have a valid and enforceable agreement to arbitrate, courts apply the contract law of the state governing the agreement."). The parties do not dispute that Texas law governs.

Ford's arguments that the arbitration agreement is unenforceable because it was included in an employment application rather than an employment contract, and because there was no consideration to support the agreement, are not persuasive. The Fifth Circuit has held that arbitration agreements in employment applications are enforceable; the agreement to arbitrate is formed when the employee signs the application and begins work. *See Hadnot v. Bay, Ltd.*, 344 F.3d 474, 477 (5th Cir. 2003). Although the employer may

7

terminate the employment after the employee has signed her job application, there is sufficient consideration in the acceptance of the job application in exchange for the employee's "agreement to arbitrate any claims arising out of any period of employment—even one day." *Id.*; *see also Halliburton*, 80 S.W.3d at 569 ("Even if [the employee's] employment had ended shortly thereafter, the promise to arbitrate would have been binding and enforceable on both parties" because the arbitration agreement "was accepted by the employee's continuing employment."). Multiple agreements are not required if the application, offer, and acceptance occur "at the 'front end' of the employment relationship" and "it is clear that [the employer's] offer of employment was contingent on [the employee's] signing the [arbitration] Agreement." *Hadnot*, 344 F.3d at 477–78. It was not necessary for Ford to sign the arbitration agreement "during her employment" with Lehman Brothers in order for the agreement to be enforceable, as Ford argues. Ford's employment with Lehman Brothers provided sufficient consideration for the arbitration agreement.

Ford's argument that she did not receive sufficient notice of the arbitration agreement is similarly unpersuasive. The Supreme Court has recognized that by enacting section 2 of the FAA, Congress "precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also OPE Intern. LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 447 (5th Cir. 2001). In *Casarotto*, the Court struck down a Montana statute that conditioned the enforceability of

arbitration agreements on compliance with a special notice requirement not applicable to contracts generally.  Heightened notice for arbitration provisions is not required under the FAA.  The arbitration agreement Ford signed clearly states that the employee "agree[s] that any controversy arising out of or in connection with [her] compensation, employment, or termination of employment with Lehman Brothers Inc. . . . shall be submitted to arbitration . . . ."  (Docket Entry No. 8, Ex. A).  The Form U-4 that Ford signed also clearly states that the employee "agree[s] to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs . . . ."  (Docket Entry No. 14, Ex. A).  Courts have routinely enforced arbitration agreements contained in Form U-4s.  *See, e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991); *Perry v. Thomas*, 482 U.S. 483 (1987); *Mouton v. Metro Life Ins. Co.*, 147 F.3d 453, 456 (5th Cir. 1998); *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 658–59 (5th Cir. 1995).

In arguing that the arbitration agreement is unenforceable because she did not receive notice of what she was signing, Ford places more weight on *Halliburton* than it can bear.  In *Halliburton*, the Texas Supreme Court held that an employer asserting a change to an at-will employment contract must show that it "unequivocally notified the employee of definite changes to employment terms."  80 S.W.3d at 568.  When the employer in *Halliburton* adopted a new dispute resolution program to resolve disputes between the company and its employees by binding arbitration, it provided a written notice to its employees explaining that if an employee continued working after the program's effective date, the employee

9

agreed to arbitrate all legal claims against the employer under the program.  The court rejected the employee's assertion that an employer must show a "knowing agreement to arbitrate employment disputes before an employee may be deemed to have waived a judicial determination of his or her rights" and found that the documents distributed by the employer "unequivocally notified" the employee that by continuing to work for the company, the employee agreed to arbitrate any claims.  *Id.* at 570.  Like the materials in *Halliburton*, the employment application that Ford signed provided that by signing the document, the employee agreed to arbitration.  The arbitration provision in the application that Ford signed appears immediately above the box for the employee's signature, appears in bolder print, and is set apart from the rest of the application in a section by itself.  Ford has failed to show that the arbitration agreement in the employment application that she signed on September 19, 2000 is unenforceable because she received insufficient notice.  The fact that six days later, Ford signed a Form U-4 with an arbitration provision further undercuts her lack of notice argument.

Ford's argument that the arbitration agreement is unconscionable also fails.  Under Texas law, a party may challenge an arbitration agreement as both procedurally unconscionable and substantively unconscionable.  Procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision.  Substantive unconscionability refers to the fairness of the arbitration provision itself.  *In re Palm Harbor Homes*, Inc., 195 S.W.3d 672, 677 (Tex. 2006) (citing *Halliburton*, 80 S.W.3d at 571).  Absent fraud, misrepresentation, or deceit, an arbitration agreement is not procedurally

10

unconscionable and will bind the parties, regardless of whether they read it or thought it had different terms. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005). An arbitration agreement may be substantively unconscionable if the existence of large arbitration costs could preclude a litigant from vindicating her federal statutory rights. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001) (quoting *Green Tree Fin. Corp.*, 531 U.S. at 91). The party opposing arbitration must prove the likelihood of incurring such costs by providing some specific information about arbitration costs that will actually be incurred. *Id.*

Ford has not shown procedural unconscionability through fraud in the inducement. To show fraudulent inducement, a party must show that: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *FirstMerit Bank*, 52 S.W.3d at 758. If fraudulent inducement is alleged as to the agreement itself rather than just to the arbitration provision standing alone, the fraudulent inducement claim is itself subject to arbitration. *Id.* at 756; *see also in re RLS Legal Solutions, LLC*, 221 S.W.3d 629, 630 (Tex. 2007).

Ford has not alleged or shown that Lehman Brothers made false material misrepresentations regarding the arbitration provision itself. *See In re Whitfield*, 115 S.W.3d 753, 757 (Tex. App.–Beaumont 2003, orig. proceeding). Rather, Ford argues that she was fraudulently induced to sign the employment application when she was told "that the

11

application was a formality and only necessary to continue employment with [Lehman Brothers]." (Docket Entry No. 9, Ex. 1 at 1).  This is an allegation of fraudulent inducement as to the employment application as a whole and must be submitted to the arbitrator to decide.  *See FirstMerit Bank*, 52 S.W.3d at 756.

Nor has Ford alleged or shown substantive unconscionability.  The party opposing arbitration cannot rely on unsupported statements to support a claim of substantive unconscionability based on financial obstacles to arbitration.  Rather, the party must provide a basis on which to ascertain the actual costs and fees of the arbitration.  *See Green Tree Fin. Corp.*, 531 U.S. at 91 (2000) ("[A] brief [from the party resisting arbitration] lists fees incurred in cases involving other arbitrations . . . .  None of this information affords a sufficient basis for concluding that [the party] would in fact have incurred substantial costs in the event her claim went to arbitration.").  In this case, Ford does not provide the necessary support for her claim.  *See FirstMerit Bank*, 52 S.W.3d at 757 ("[S]ome specific information of future costs is required. . . .  As in *Green Tree*, [the plaintiffs] provided no evidence that the AAA would actually conduct the arbitration or charge the specified fees.").  Lehman Brothers has provided information that in arbitration, Ford would not encounter financial obstacles to proceeding.  Lehman Brothers points to evidence showing that the fees charged by the National Association of Securities Dealers for a statutory employment discrimination claim is substantially less than the fee Ford estimates she must pay.  The fee may also be waived on a showing of financial hardship.  Ford has failed to show that the arbitration agreement is substantively unconscionable because it imposes unreasonable arbitration fees

and costs.

## III.    Conclusion

Lehman Brothers's motion to compel arbitration and dismiss to permit the arbitration to proceed is granted.  The motion to continue and the request to stay are denied as moot. An order of dismissal is separately entered.

SIGNED on December 18, 2007, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge